**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BWP MEDIA USA, INC. d/b/a PACIFIC COAST NEWS and NATIONAL PHOTO GROUP, LLC, | |
| *Plaintiffs,* | |
| v. | C.A. No.: 13-cv-07574 (KPF) |
| GOSSIP COP MEDIA, LLC, | **Jury Trial Demanded** |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPPORT OF
DEFENDANT GOSSIP COP MEDIA, LLC'S MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6), OR, IN THE
ALTERNATIVE, RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant, Gossip Cop Media, LLC ("Gossip Cop), by and through its undersigned

counsel, hereby submits the instant memorandum of law and concurrently filed declaration of

Yuval H. Marcus, Esq., ("Marcus Decl.") in support of its motion to dismiss the Amended

Complaint in the above-captioned action pursuant to Rule 12(b)(6)[1] of the Federal Rules of Civil

Procedure.

---

[1] As stated in Gossip Cop's Notice of Motion, if the Court finds the evidence contained in the exhibits to Gossip Cop's motion are not properly before it on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), the Court may nevertheless consider such evidence.  However, if the Court considers the evidence, it must convert the instant motion to dismiss into a motion for summary judgment under FRCP 56.  *See* FRCP 12(d).

# TABLE OF CONTENTS

PAGE

I.   PRELIMINARY STATEMENT ..................................................................... 1
II.  FACTUAL BACKGROUND ........................................................................ 2
     A.  Plaintiffs Filed More Than 150 Copyright Lawsuits in the Past Year Alone .......... 2
     B.  Gossip Cop's News Reporting Business .................................................... 2
     C.  The Four Images-at-Issue ..................................................................... 2
         1.  The Kutcher/Kunis Image .............................................................. 3
         2.  The Pattinson Image ..................................................................... 4
         3.  The Ross Image ........................................................................... 4
         4.  The Paltrow Image ....................................................................... 5
     D.  The Paltrow Image is Not Registered with the U.S. Copyright Office .................. 6
         1.  The Paltrow Image Was Not Registered When Plaintiffs Filed Suit .......... 6
         2.  Gossip Cop Informed Plaintiffs and the Court on January 13, 2014
             that Plaintiffs Could Not Sue for Infringement of the Unregistered
             Paltrow Image ............................................................................. 6
         3.  Plaintiffs Acknowledged in Their January 16, 2014 Letter to the
             Court That Copyright Registration is a Necessary Element of a
             "Well Plead[ed] Copyright Infringement Claim" ................................. 6
         4.  Plaintiffs Seek Relief in the Amended Complaint for Alleged
             Infringement of the Unregistered Paltrow Image ................................. 7
         5.  Plaintiffs Misled this Court at the March 4, 2014 Pre-Motion
             Conference Regarding the Copyright Application Process ....................... 7
III. STATEMENT OF APPLICABLE LAW ........................................................ 7
     A.  Standard on a Motion to Dismiss Pursuant to FRCP 12(b)(6) ......................... 7
     B.  Fair Use and the Motion to Dismiss Stage ................................................ 8
IV.  ARGUMENT ......................................................................................... 9
     A.  Plaintiffs Cannot State a Plausible Claim for Infringement of the Paltrow
         Image Because it is Not Registered With the U.S. Copyright Office .................. 9
         1.  Registration Has Been a Necessary Element of a "Properly Plead
             Copyright Infringement Claim" in this District For at Least Thirty
             Years ...................................................................................... 10
         2.  Plaintiffs Have Not Satisfied § 411(a)'s Pre-Suit Registration
             Requirement With Respect to the Unregistered Paltrow Image ............... 10
     B.  Plaintiffs' Claims for Alleged Copyright Infringement Must be Dismissed
         Because Gossip Cop's Use of the Images is Protected by the Fair Use
         Defense ............................................................................................ 15
         1.  Purpose and Character of the Use: Gossip Cop's Use of the Images
             Was for Transformative News Reporting and Commentary .................... 15
         2.  The Nature of the Images: Plaintiffs' Images are Entitled to Little,
             if Any, Protection Against Gossip Cop's Transformative Use
             Because They (1) Are Creative and (2) Were Previously Published ......... 20
         3.  The Amount and Substantiality of the Use: Gossip Cop's
             Transformative Use Required Copying the Images .............................. 21

        4.    The Market Inquiry: Gossip Cop's Use of the Images Does *Not* Usurp the Market for Plaintiffs' Image..................................................22

        5.    The Balance of Relevant Factors Weighs in Favor of Gossip Cop ...........24

  C.    Plaintiffs' Claim for Vicarious Copyright Infringement Must be Dismissed Because Gossip Cop's Employees' Alleged Use of the Images is Also Protected by the Fair Use Defense........................................................................24

V.    CONCLUSION....................................................................................................25

{05086/608911-000/01144438.1}

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836 (S.D.N.Y., March 26, 2013) ................................................................................................................................... *passim*

*Arista Records, LLC v. Lime Group, LLC*, 784 F.Supp.2d 398 (S.D.N.Y. 2011) ....................... 24

*Ascent Health v. Wells*, 2013 WL 1010589 (E.D.N.C., March 14, 2013) ..................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................... 8

*Berry v. Deutsche Bank Trust Co. Americas*, 2008 WL 4694968 (S.D.N.Y., Oct. 21, 2008)……………………………………………………………………..24

*Bill Graham Archives v. Dorling Kindersely, Ltd.*, 448 F.3d 605 (2d Cir. 2006) ....................... 23

*Blanch v. Koons*, 467 F.3d 244 (2d. Cir. 2006) ......................................................... 18, 20, 21, 23

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ........................... 8, 9

*Calloway v. The Marvel Entertainment Group*, 1983 WL 1141 (S.D.N.Y. 1983)...................... 10

*Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) .............................................................................................................. ……15, 17, 20

*Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013).................................................................... *passim*

*Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998) .......... 24

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .................................................. 2, 3

*DO Denim, LLC v. Fried Denim, Inc.*, 634 F.Supp.2d 403 (S.D.N.Y. 2009).............................. 11

*Franklin Electronic Publishers v. Unisomic Prod. Corp.*, 763 F.Supp. 1 (S.D.N.Y. 1991) ........ 10

*Gee v. CBS, Inc.*, 612 F.2d 572 (3d Cir. 1979) ......................................................................... 10

*Guccione v. Flynt*, 1984 WL 18 (S.D.N.Y., June 15, 1984) (Sweet, J.)...................................... 20

*Gusler v. Fischer*, 580 F.Supp.2d 309 (S.D.N.Y. 2008) (Sweet, J.)............................................. 9

*In re MTBE Products Liability Litigation*, 2013 WL 6869410 (S.D.N.Y., Dec. 30, 2013) ........... 2

*Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005)..... 7

*K-Beech, Inc. v. Does 1-29*, 2011 WL4401933 (E.D.N.Y., Sept. 19, 2011) ............................... 12

*Kelly v. LL Cool J*, 145 F.R.D. 32 (S.D.N.Y. 1992) .................................................................... 10

*Klauber Bros., Inc. v. Russell-Newman, Inc.*, 2013 WL 1245456 (S.D.N.Y., March 26, 2013).. 11

*Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687 (2d Cir. 1990) .......................................... 9

*Mathieson v. Associated Press*, 1992 WL 164447 (S.D.N.Y., June 25, 1992)................ 16, 18, 21

*Membler.com LLC v. Barber*, 2013 WL 5348546 (E.D.N.Y, Sept. 23, 2013) ............................ 11

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 2012 WL 1021535
   (S.D.N.Y., Mar. 26, 2012) ......................................................................................... 11, 12, 14

*In re BitTorrent Adult Film Copyright Infringement Case*, 296 F.R.D. 80 (E.D.N.Y. 2012) ...... 13

*Newton v. Penguin/Berkley Pub. USA,* 2014 WL 61232 (S.D.N.Y, Jan. 6, 2014) ................ 10, 11

*Nunez v. Caribbean Intern. News Corp.*, 235 F.3d 18 (1st Cir. 2000) ............................ 16, 17, 22

*NXIVM Corp v. Ross Institute*, 364 F.3d 471 (2d Cir. 2004)........................................................ 23

*Payne v. Courier-Journal*, 2005 WL1287434 (W.D. Ky, May 31, 2005)...................................... 9

*Pearson Educ., Inc. v. Frances*, 2012 WL 2930218 (S.D.N.Y., July 17, 2012).......................... 11

*Psihoyos v. John Wiley & Sons, Inc.*, 2011 WL 4916299 (S.D.N.Y., Oct. 14, 2011)…………...12

*Pyatt v. Raymond*, 462 Fed.Appx. 22 (2d Cir. 2012).................................................................... 11

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) ...... 11, 13

*Righthaven, LLC v. Realty One Group, Inc.*, 2010 WL 4115413 (D. Nev., Oct. 19, 2010)........... 9

*Ritani, LLC v. Aghjayan, et al.*, 2013 WL 4856160 (S.D.N.Y., Sep. 9, 2013).............................. 8

*Scott v. WorldStarHipHop*, 2011 WL 5082410 (S.D.N.Y., Oct. 25, 2011).................................... 8

{05086/608911-000/01144438.1}

**Statutes**

17 U.S.C. § 107.................................................................................... 1, 15, 17, 20

17 U.S.C. § 411(a) .................................................................................. 10, 12, 14

Fed. R. Civ. P. 12(b)(6)................................................................................. *passim*

Fed. R. Civ. P. 56 ............................................................................................... 9

**Other Authorities**

5 Patry on Copyright § 17:78....................................................................... 13, 14

Patry on Fair Use § 7:4 ..................................................................................... 9

## I.   PRELIMINARY STATEMENT

This is a copyright infringement action filed in connection with images taken by paparazzi– one of about 150 such lawsuits filed by Plaintiffs in the past year alone, including one this week.  In this action, Plaintiffs seek to use their status as putative copyright owners to chill Gossip Gop's transformative fair use of certain images in conjunction with news reporting and commentary on Gossip Cop's website.  Specifically, Gossip Cop, an industry leader in "policing" celebrity news outlets, used the images for two transformative purposes: (i) to report and comment on the veracity of previous-published articles that used the images to support erroneous claims made therein and (ii) to complement their reporting and commentary on newsworthy topics when the images were, in effect, *the story*.  Thus, Gossip Cop's use of the images is classic, transformative news reporting and commentary, *i.e.* "fair use." As codified by Congress in 17 U.S.C. § 107, fair use is a complete and absolute defense to allegations of copyright infringement such as Plaintiffs' claims in this action.

Not only are Plaintiffs' purported copyright infringement claims fatally deficient based on the fair use doctrine, their claims for alleged infringement of the unregistered image in this action also fail based on at least thirty years of controlling law.  Compounding the legal unreasonableness of Plaintiffs' claim is their *acknowledgement to this Court* that copyright registration is a pre-condition to filing suit.

Thus, based on the foregoing, and for the reasons discussed more fully *infra*, the Amended Complaint must be dismissed in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because (i) Plaintiffs admittedly do not possess a copyright registration certificate for one of the images in this action and (ii) Gossip Cop and/or its employees' use of the images is protected by the fair use defense such that neither can be liable for copyright infringement as a matter of law.

{05086/608911-000/01144438.1}

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Filed More Than 150 Copyright Lawsuits in the Past Year Alone

Plaintiffs have filed at least 150 copyright infringement lawsuits in the past year alone, most recently on Monday, March 17, 2014.  *See* Marcus Decl., ¶¶ 5, 6; Ex. A.[2]

### B.    Gossip Cop's News Reporting Business

Gossip Cop is a news outlet that specializes in "policing" the celebrity news media.  *See Dkt.* 11.[3]  Specifically, Gossip Cop polices news stories that include images of celebrities to support the claims made in the stories.  *Id.*  If Gossip Cop's investigation reveals these claims are false, it copies the headline and image from the original story and uses them in conjunction with its own news story regarding the veracity of the original story.  *Id.*  Gossip Cop also displays a "Real/Rumor" meter on the left-hand side of its new stories based on its determination of the truthfulness of the original story.  *Id.*

### C.    The Four Images-at-Issue

The following provides a synopsis of how Gossip Cop used the four images-at-issue in conjunction with news stories on its website.

---

[2] The information contained in Exh. A to the Marcus Decl. is properly before the Court on in the instant motion to dismiss because it concerns information for which "judicial notice may be taken."  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Pursuant to Rule 201 of the Federal Rules of Evidence ("FRE"), courts may take judicial notice of a "fact that is not subject to reasonable dispute because it […] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Exemplary sources are government websites.  *See, In re MTBE Products Liability Litigation*, 2013 WL 6869410, *4 (S.D.N.Y., Dec. 30, 2013) ("Courts routinely take judicial notice of data on government websites because it is presumed authentic and reliable.").  Here, the information in Exh. A to the Marcus Decl. was obtained from the federal government's publicly-available website, www.pacer.gov.  Thus, it was obtained from a source "whose accuracy cannot reasonably be questioned," and may be properly considered on the instant motion to dismiss.

[3] The Court may properly consider *Dkt.* 11 (which is a true and correct copy of Gossip Cop's January 13, 2014 letter to the Court) when determining the instant motion to dismiss because it was filed "on this case docket *prior to* the filing of Plaintiffs' amended complaint [*Dkt.* 13]."  *See Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836, *6 (S.D.N.Y., March 26, 2013).  (emphasis in original).

### 1. The Kutcher/Kunis Image

The first Image-at-issue depicts celebrities Ashton Kutcher and Mila Kunis walking on a street together carrying cups of coffee and a newspaper (the "Kutcher/Kunis Image").  *See Dkt.* 13 at ¶ 15.  Before it appeared in a news story on Gossip Cop's website, the Kutcher/Kunis Image was published in the London tabloid, *The Sun*, in an article entitled, "AK & MK in UK […] Ashton Kutcher and Mila Kunis are moving to London."  *See* Marcus Decl. at ¶ 7, Exh. B.[4]  *The Sun* used the article to support its claim that "[t]he couple are already househunting in the flash Marylebone area, where their neighbours will include Kate Hudson and Guy Ritchie."  *Id.*

After independently investigating *The Sun's* claims, Gossip Cop determined that Ms. Kunis and Mr. Kutcher were *not* moving to London.  *Id.*  Gossip Cop then used the Kutcher/Kunis Image (as it appeared in *The Sun* and with attribution to *The Sun*) and the above-quoted headline, in conjunction with a January 28, 2013 news story on its website entitled, "Mila Kunis and Ashton Kutcher 'Moving to London,' Claims Tab," as visual aids to impress upon the story's readers that nothing in the Kutcher/Kunis Image supported *The Suns*' claims that the couple was moving to London.  *See Dkt.* 11.  Gossip Cop's "Real/Rumor" meter on the left-hand side of the article was at "0."  *Id.*

---

[4]    The Court may properly consider Exhibit B to the Marcus Decl. (which is a true and correct copy of the Kutcher/Kunis Image as it appeared in a January 28, 2013 news story on Gossip Cop's website) when determining the instant motion to dismiss.  *See Chambers*, 282 F.3d at 153 (when considering a motion to dismiss pursuant to FRCP 12(b)(6), a court may consider the complaint and "documents attached to the complaint as an exhibit or incorporated by reference [in the complaint] … or … documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  For a document to be "incorporated by reference," the "Complaint must make a clear, definite and substantial reference to the document."  *Accurate Grading Quality Assur., Inc.*, 2013 WL 1234836 at *6

     Here, the Kutcher/Kunis Image, as it appeared in a January 28, 2013 news story on Gossip Cop's website, contains the same imaged attached to the Amended Complaint in Exhibit 1.  *See Dkt.* 13.  Furthermore, the Amended Complaint incorporates the Kutcher/Kunis Image by reference and Plaintiffs had knowledge of, and relied on same, when bringing suit and drafting the Amended Complaint.  Indeed, any argument to the contrary would be without merit given the Kutcher/Kunis Image, as it appeared in a January 28, 2013 news story on Gossip Cop's website, is one of four instances of alleged copyright infringement upon which the Amended Complaint is based.  Thus, the Court may properly consider Exhibit B to the Marcus Decl. when determining the instant motion to dismiss.

-3-

### 2.   The Pattinson Image

The second Image-at-issue depicts celebrity actor Robert Pattinson (of *Twilight* fame) wearing a hat and slumped over in what appears to be the back seat of a car.  *See Dkt.* 13 at ¶ 16. The Pattison Image also contains an inset in the upper left-hand corner of celebrity musician Katy Perry inside a yellow-rimmed circle.  Before the Pattinson Image appeared on Gossip Cop's website, it was published on the website *HollywoodLife* in an article entitled, "Robert Pattinson Parties With Katy Perry Before His Birthday—PIC." *See* Marcus Decl. at ¶ 8, Exh. C.[5] *HollywoodLife* used the Pattinson Image to support its claims that "Rob and Kay hit up LA hotspot Chateau Marmont for a night of dancing."  *Id.*

After conducting an independent investigation, Gossip Cop determined that *HollywoodLife's* claims were not true.  Gossip Cop then used the Pattinson Image (as it appeared on *HollywoodLife* and with attribution to *HollywoodLife*), and the above-quoted headline, in conjunction with a May 13, 2013 news story that appeared on its website, entitled, "Robert Pattinson, Katy Perry Partying at Chateau Marmont Before His Birthday?" as visual aids to impress upon the story's readers that nothing in the Pattinson Image supported *HollywoodLife's* claims that he went to a party with Katy Party at the Chateau Marmont.  *Id*; *see generally Dkt.* 11. Gossip Cop's "Real/Rumor" meter on the left-hand side of the article was at "0." *Id.*

### 3.   The Ross Image

The third Image-at-issue depicts celebrity model and actress Liberty Ross walking and carrying a purse over her shoulder (the "Ross Image").  *See Dkt.* 13 at ¶ 17.  Before the Ross Image appeared on Gossip Cop's website, it was published on the celebrity news website "Thirty

---

[5]The Court may properly consider Exhibit C to the Marcus Decl. (which is a true and correct copy of the Pattinson Image as it appeared in a May 13, 2013 news story on Gossip Cop's website) when determining the instant motion to dismiss for the same reasons that it may properly consider Exhibit B to the Marcus Decl.  *See* fn. 4, *supra*.

Mile Zone," better known as *TMZ*.   *See* Marcus Decl. at ¶ 9, Exh. D.[6]  Gossip Cop used the Ross Image, as it appeared on *TMZ* (with TMZ's watermark and an attribution to "TMZ") in an August 7, 2012 news story that appeared on Gossip Cop's website, entitled, "Rupert Sanders Wife Liberty Ross Spotted Without Wedding Rings (PHOTO)," as a visual aid to impress upon the story's readers that, as reported by Gossip Cop in the story, Liberty Ross and her husband were experiencing difficulty in their marriage.   Specifically: the left-hand side of the Ross Image depicted Ms. Ross walking; the right-hand side of the Ross Image depicted a magnification of Ms. Ross' left hand, which revealed she was not wearing a wedding ring or band.   *Id*; *see generally Dkt.* 11.  Gossip Cop's "Real/Rumor" meter was at a "10."   *Id.*

### 4.    The Paltrow Image

The fourth Image-at-issue is a screenshot of a video of actress Gwyneth Palrow riding a Vespa motorized scooter (the "Paltrow Image").   *See Dkt.* 13 at ¶ 18.  Gossip Cop used the Paltrow Image, together with a picture of Ms. Paltrow (with attribution to "Getty Image") in a September 9, 2013 new story on its website, entitled, "Gwyenth Paltrow Cuts Off School Bus in Vespa Scooter (VIDEO)." *See* Marcus Decl. at ¶ 10, Exh. E.[7]  Gossip Cop used the Paltrow Image *and* Getty Image as visual aids to impress upon the story's readers that, in the video, Mr. Paltrow "and her husband Chris Martin were picking up their children from school in Los Angeles when she darted in front of an approaching bus with her scooter."   *Id*; *see generally Dkt.* 11.

---

[6] The Court may properly consider Exhibit D to the Marcus Decl. (which is a true and correct copy of the Ross Image as it appeared in an August 7, 2012 news story on Gossip Cop's website) when determining the instant motion to dismiss for the same reasons that it may properly consider Exhibit B to the Marcus Decl.  *See* fn. 4, *supra*.

[7] The Court may properly consider Exhibit E to the Marcus Decl. (which is a true and correct copy of the Paltrow Image as it appeared in a September 9, 2013 news story on Gossip Cop's website) when determining the instant motion to dismiss for the same reasons that it may properly consider Exhibit B to the Marcus Decl.  *See* fn. 4, *supra*.

**D.      The Paltrow Image is Not Registered with the U.S. Copyright Office**

Plaintiffs have acknowledged in this action that copyright registration is a necessary element of a properly plead copyright infringement claim in this judicial district.   Yet, Plaintiffs continue to seek relief for alleged infringement of the unregistered Paltrow Image.

**1.      The Paltrow Image Was Not Registered When Plaintiffs Filed Suit**

Plaintiffs admittedly did not possess a copyright registration certificate for the Paltrow Image when they commenced this action.   *See Dkt.* 1 at ¶¶ 1, 12; Ex. 1 (wherein only Application Number 1-991548211 is listed).   There was no allegation in the original Complaint that Plaintiffs applied to register, but were denied registration for, the Paltrow Image.   *Id.*

**2.      Gossip Cop Informed Plaintiffs and the Court on January 13, 2014 that Plaintiffs Could Not Sue for Infringement of the Unregistered Paltrow Image**

On January 13, 2014, Gossip Cop timely-served a pre-motion letter regarding its proposed motion to dismiss the original Complaint pursuant to FRCP 12(b)(6).   *See Dkt.* 11.   Among the grounds for Gossip Cop's proposed motion to dismiss was that Plaintiffs could not sue for alleged infringement of the unregistered Paltrow Image.   *Id.* at p. 2.

**3.      Plaintiffs Acknowledged in Their January 16, 2014 Letter to the Court That Copyright Registration is a Necessary Element of a "Well Plead[ed] Copyright Infringement Claim"**

On January 16, 2014, Plaintiffs served their response to Gossip Cop's pre-motion letter. *See Dkt.* 12[8].   In their response, Plaintiffs acknowledged that copyright registration is a necessary element of a "properly plead[ed] copyright infringement claim."   *Id.*

---

[8] The Court may properly consider Plaintiffs' January 16, 2014 letter (*Dkt.* 12) when determining the instant motion to dismiss because it was filed on this case's docket before Plaintiffs' filed the Amended Complaint (*Dkt.* 13).   *See Accurate Grading Quality Assur., Inc.*, 2013 WL 1234836 at *6.

{05086/608911-000/01144438.1}

**4.    Plaintiffs Seek Relief in the Amended Complaint for Alleged Infringement of the Unregistered Paltrow Image**

On January 31, 2014, Plaintiffs filed their Amended Complaint.  *See Dkt.* 13.  In the Amended Complaint, Plaintiffs continued to seek relief for alleged copyright infringement of the unregistered Paltrow Image.  *See id.* at ¶ 1; Ex. 1 (wherein only Application Number 1-991548211 is listed).

**5.    Plaintiffs Misled this Court at the March 4, 2014 Pre-Motion Conference Regarding the Copyright Application Process**

At the parties' March 4, 2014 pre-motion, the Court asked Plaintiffs' counsel whether "[o]ne needs to have a registered copyright […] in order to pursue a copyright claim […]"?  *See* Marcus Decl. at ¶ 11, Exh. F at 2:15-7.  In response, Plaintiffs' counsel stated, *inter alia*:

> "[T]he U.S. Copyright Office is running somewhere between six and eight months in arrears from application to registration number.  The question then before the Court would be, were this to go forward on a motion to dismiss on this issue is, is the Copyright Act furthered by requiring a rightsholder to wait six- to eight months before they would be able to bring an action seeking an injunction or damages relief against the rights infringers […]?"  *Id.* at 3:22-5; 4:1-5.

What Plaintiffs' counsel *failed* to inform the Court is that the U.S. Copyright Office processes applications on an expedited basis, referred to by the U.S. Copyright Office as "special handling."  *See* Marcus Decl. at ¶ 12, Exh. G.  Rather than wait "six- to eight months," applicants can pay to have their applications processed in as little as five days.  *Id.*[9]

## III.    STATEMENT OF APPLICABLE LAW

### A.    Standard on a Motion to Dismiss Pursuant to FRCP 12(b)(6)

To survive a motion to dismiss pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[9] The Court may properly take judicial notice of this information because it was obtained from the U.S. Copyright Office's publicly-available website. *See Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (judicial notice taken of information obtained from the U.S. Copyright Office's website).

{05086/608911-000/01144438.1}

*Ritani, LLC v. Aghjayan, et al.*, 2013 WL 4856160, *9 (S.D.N.Y., Sep. 9, 2013) *quoting Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).   In other words, a plaintiff "must allege sufficient facts to 'nudge[ ] their claims across the line from conceivable to plausible.'"  *Ritani, LLC*, 2013 WL 4856160 at *9 *quoting Twombly,* 550 U.S. at 570.  While the "plausibility standard is not akin to a 'probability requirement,' […] it [does require] more than a sheer possibility that a defendant has acted unlawfully." *Id.  quoting Cohen v. Stevanovich,* 772 F.Supp.2d 416, 423 (S.D.N.Y. 2010).   In sum, although "the court must accept the factual allegations of a complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*  [internal quotations omitted].

### B.        Fair Use and the Motion to Dismiss Stage

A court may determine the applicability of the fair use defense at the motion to dismiss stage when "the defense […] appears on the face of [the complaint]." *Scott v. WorldStarHipHop*, 2011 WL 5082410, *8 (S.D.N.Y., Oct. 25, 2011).   In other words, when all that is needed to determine the question of fair use is the plaintiff's original work and the defendant's allegedly infringing work, and such works are properly before the court on a motion to dismiss, a court can simply review the two works side-by-side and dispense with further motion practice.  *See, e.g.*, *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).

In *Cariou v. Prince*, the Second Circuit stated the Seventh Circuit's decision in *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) was "instructive" when determining applicability of the fair use defense at the motion to dismiss stage. *Cariou*, 714 F.3d at 707.  In *Brownmark Films, LLC*, the Seventh Circuit held that, when "the only two pieces of evidence needed to decide the question of fair use [are] the original version and [the defendant's

alleged use]," courts can simply view the images "side-by-side" at the motion to dismiss stage. *Brownmark Films, LLC*, 682 F.3d at 690-92.

Moreover, as Patry on Fair Use observes, "courts have [increasingly] considered fair use on a rule 12(b)(6) motion to dismiss for failure to state a claim." PATRY ON FAIR USE § 7:4, *Summary judgment and Rule 12(b)(6) motions*; *citing to Ascent Health v. Wells*, 2013 WL 1010589, *21 (E.D.N.C., March 14, 2013) ("the court is not precluded from ruling on the [fair use] affirmative defense on a motion to dismiss pursuant to Rule 12(b)(6) [if] the defense's applicability is apparent from the face of the complaint and from any documents which are appropriate for consideration on a Rule 12(b)(6) motion"); *Payne v. Courier-Journal*, 2005 WL1287434, *3 (W.D. Ky., May 31, 2005) (wherein the court held that, because the works in question "are in the record, the Court may determine as a matter of law" whether fair use applies); and *Righthaven, LLC v. Realty One Group, Inc.*, 2010 WL 4115413 (D. Nev., Oct. 19, 2010) (dismissing action at the motion to dismiss stage based upon finding of fair use).[10]

## IV.   ARGUMENT

### A.   Plaintiffs Cannot State a Plausible Claim for Infringement of the Paltrow Image Because it is Not Registered With the U.S. Copyright Office

Since the Paltrow Image is not registered with the U.S. Copyright Office, Plaintiffs cannot state a plausible claim for infringement thereof.

---

[10]      If the Court finds that copies of Gossip Cop's website (which were incorporated by reference into the original and Amended Complaint *and* necessarily relied upon by Plaintiffs in drafting both) are not properly before the Court on the instant motion to dismiss pursuant to FRCP 12(b)(6), the Court may nevertheless consider such evidence.   However, if considered, the Court must convert the instant motion to dismiss to one for summary judgment. *See* FRCP 12(d).

Accordingly, Plaintiffs are on notice of the possibility of conversion, and any objection to same would be unfounded.   *See, e.g., Gusler v. Fischer*, 580 F.Supp.2d 309, 314 (S.D.N.Y. 2008) (Sweet, J.) (wherein the court held "the "essential inquiry, when determining if the district court correctly converted a motion to dismiss into a motion for summary judgment, is whether the non-movant 'should have reasonably anticipated the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'") *quoting Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990).

1.     **Registration Has Been a Necessary Element of a "Properly Plead Copyright Infringement Claim" in this District For at Least Thirty Years**

For at least thirty years, a "properly plead copyright infringement claim" in this district has required a plausible allegation that, *inter alia*, the work at issue has been registered in accordance with the statute [*i.e.*, § 411(a) of the Copyright Act]." *Newton v. Penguin/Berkley Pub. USA,* 2014 WL 61232, *4 (S.D.N.Y, Jan. 6, 2014) *citing to Kelly v. LL Cool J*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) *citing to Franklin Electronic Publishers v. Unisomic Prod. Corp.*, 763 F.Supp. 1, 4 (S.D.N.Y. 1991) and *Calloway v. The Marvel Entertainment Group*, 1983 WL 1141, *3 (S.D.N.Y. 1983) *citing to Gee v. CBS, Inc.*, 612 F.2d 572 (3d Cir. 1979).

Here, Plaintiffs' attempt to sue for alleged copyright infringement of the unregistered Paltrow Image is squarely at odds with at least thirty years of controlling law in this district. Compounding the legal unreasonableness of Plaintiffs' claims is their *acknowledgement to this Court* that one element of a "properly plead[ed] copyright right claim" is that the work-at-issue has been "registered." *See Dkt.* 12.  Yet, Plaintiffs' have doubled-down on their meritless claims in the Amended Complaint and continue to seek relief for alleged infringement of the unregistered Paltrow Image.  As such, Plaintiffs have not—and cannot—allege facts sufficient to render it plausible they can prove the elements of a properly plead copyright infringement claim. Thus, Plaintiffs' claims for infringement of the unregistered Paltrow Image must be dismissed.

2.     **Plaintiffs Have Not Satisfied 17 U.S.C. § 411(a)'s Pre-Suit Registration Requirement With Respect to the Unregistered Paltrow Image**

Section 411(a) of the Copyright Act reads, in pertinent part, that: "[n]o civil action for infringement of the copyright in any United States work shall be instituted *until preregistration or registration of the copyright claim has been made* in accordance with this title." (Emphasis supplied).  In *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166, 130 S.Ct. 1237, 176 L.Ed.2d 18

(2010), the Supreme Court held that compliance with § 411(a)'s registration requirement is a "precondition" to filing a claim for copyright infringement.  In *Pyatt v. Raymond*, 462 Fed.Appx. 22, 24 (2d Cir. 2012), the Second Circuit held that § 411(a) of the Copyright Act "requires copyright holders to register their works before suing for copyright infringement."

Moreover, courts in the Second Circuit "dismiss complaints for failure to state a claim in connection with the Section 411(a) precondition when it is obvious from the face of the complaint that a plaintiff has failed to register [their] copyright."  *Newton,* 2014 WL 61232 at *4; *see also Accurate Grading Quality Assur., Inc.*, 2013 WL 1234836 at *7 (dismissing copyright infringement claim on a motion to dismiss because "[o]n the face of the complaint, Plaintiffs do not allege existence of a valid copyright [registration] […] [t]hey have likewise failed to allege that they previously sought registration and had been denied") and *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 2012 WL 1021535, *5 (S.D.N.Y., Mar. 26, 2012) (wherein Chief Judge Loretta A. Preska held "[c]ourts in [the Second] Circuit have […] required that a plaintiff either hold a valid copyright registration outright or have applied and been refused a registration *prior* to filing a civil claim, both before and after *Reed Elsevier*.  A "pending [copyright] application does not suffice."  *Id.* (emphasis in original).

The aforementioned decisions are joined by a host of others from courts in the Second Circuit holding that plaintiffs must either have (i) an existing copyright registration certificate or (ii) have their copyright application rejected *before* filing suit for alleged copyright infringement. *See, e.g.*, *Klauber Bros., Inc. v. Russell-Newman, Inc.*, 2013 WL 1245456, *4 (S.D.N.Y., March 26, 2013); *Pearson Educ., Inc. v. Frances*, 2012 WL 2930218, *1 (S.D.N.Y., July 17, 2012); *DO Denim, LLC v. Fried Denim, Inc.*, 634 F.Supp.2d 403, 406 (S.D.N.Y. 2009); and *Membler.com LLC v. Barber*, 2013 WL 5348546, *4 (E.D.N.Y, Sept. 23, 2013).

{05086/608911-000/01144438.1}

Here, Exhibit 1 to the Amended Complaint confirms what Plaintiffs have freely admitted throughout this action: they do *not* possess a copyright registration certificate for the Paltrow Image.  Furthermore, there is *no* allegation in the Amended Complaint that Plaintiffs applied to register, but were denied registration for, the Paltrow Image before filing this action or the Amended Complaint.  Accordingly, Plaintiffs' claims for infringement of the Paltrow Image must be dismissed pursuant to FRCP 12(b)(6) because it is plainly obvious from the face of the Amended Complaint that Plaintiffs have not satisfied § 411(a)'s pre-suit registration requirement.

> ### i.   Plaintiffs' Pending Copyright Application for the Paltrow Image Cannot Satisfy § 411(a)'s Pre-Suit Registration Requirement

As Chief Judge Preska held in *Muench Photography, Inc.*, a "pending [copyright] application does not suffice" for purposes of § 411(a)'s pre-suit registration requirement.   In support of her decision, Chief Judge Preska referenced, *inter alia*, the court's holding in *K-Beech, Inc. v. Does 1-29*, 2011 WL4401933, *1 n. 2 (E.D.N.Y., Sept. 19, 2011), that:

> "Prior to *Reed Elsevier*, the Second Circuit held that failure to register a work was a defect that deprived the federal courts of jurisdiction over an infringement action. Thus, the cited cases dismiss for lack of subject-matter jurisdiction causes of action regarding unregistered works.  Although *Reed Elsevier* overruled these cases to the extent that they held jurisdiction was lacking, it did *not* affect the holdings that a work with a pending application is not a registered work within the meaning of Section 411(a)."  *Id*. (emphasis supplied).

Chief Judge Preska then held the "Plaintiff […] fail[ed] to a state a claim" with respect to the images "for which registrations were listed as 'pending' at the time of [defendant's] motion [to dismiss]."  *Muench Photography, Inc.*, 2012 WL 1021535 at *6.

Chief Judge Preska is not alone in her holding that a pending copyright application simply cannot satisfy § 411(a)'s pre-suit registration requirement.  *See, e.g.*, *Psihoyos v. John Wiley & Sons, Inc.*, 2011 WL 4916299, *2 (S.D.N.Y., Oct. 14, 2011) (Rakoff, J.) (wherein the court held that "[t]he mere pendency of a[] [copyright] application is, however, insufficient to satisfy section

-12-

411(a)'s registration requirement, which the Supreme Court has determined to be an absolute 'precondition' to suit"); *see also Accurate Grading Quality Assur., Inc.*, 2013 WL 1234836 at *7 (wherein the Court held that "mere application is legally insufficient […] [t]hus, any pending application cannot support [plaintiffs'] tenuous copyright claim, even if registration is later obtained") and *In re BitTorrent Adult Film Copyright Infringement Case*, 296 F.R.D. 80 (E.D.N.Y. 2012).

This district's view on the insufficiency of a pending copyright application is echoed by prominent copyright scholar, William F. Patry, and the U.S. Copyright Office. Patry states that:

> "Section 411(a)'s terms are clear and unambiguous: no action for infringement, whether in the complaint or in a counterclaim, may be instituted until registration has been made or refused. Since it is the Copyright Office that 'makes' the registration, not the claimant, merely applying for registration is wholly insufficient. The Copyright Office must have issued, with a seal, the numbered certificate of registration, a step that does not take place until after the claim has been examined and approved. The drafters of the 1976 Act went to grant pains to make it pellucid that actual registration is required." 5 PATRY ON COPYRIGHT § 17:78, *Registration Before Filing Suit*.

Furthermore, in representing the views of the U.S. Copyright Office during *Reed Elsevier* that a pending copyright application cannot satisfy § 411(a)'s pre-suit registration requirement, then-Solicitor General (now Supreme Court Justice) Elana Kagan, reasoned:

> "Section 411(a) requires the plaintiff to possess a registration certificate, to have been refused registration, or to have preregistered, at the time the suit is commenced […] [s]ection 411(a) unambiguously states that registration must have been "made in accordance with this title"—i.e., granted by the Copyright Office—before a suit may be filed. *See, e.g., La Resolana Architects, PA v. Clay Realtors Angel Fire,* 416 F.3d 1195, 1203–1205 (10th Cir. 2005) […] [a]nd although Section 411(a) allows the putative copyright owner to sue even if his registration application is denied, the statute clearly contemplates that the plaintiff will commence the suit only after the Copyright Office has acted on the application […] *See* 17 U.S.C. 411(a) (providing that, where a properly submitted registration application "has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights") […] [m]oreover, if the district court were to adjudicate an infringement suit on the merits while the plaintiff's application was pending before the Copyright Office, the court would be deprived of the Register's views on such issues as

-13-

copyright ability." (Emphasis supplied).  5 Patry on Copyright § 17:78, *Registration Before Filing Suit*.

Here, Plaintiffs' allegations in the original and Amended Complaints (and Exhibit 1 thereto) indicate their application to register the Paltrow Image was pending when this action was commenced, and *remains* pending.  Indeed, Plaintiffs' counsel confirmed as much during the parties' March 4, 2014 pre-motion conference.  However, as discussed *supra*, a pending copyright application simply cannot satisfy section 411(a)'s registration requirement, which the Supreme Court has determined to be an absolute 'precondition' to suit."  Accordingly, Plaintiffs' claims for infringement of the unregistered Paltrow Image must dismissed pursuant to FRCP 12(b)(6).

### ii.    Plaintiffs Cannot Amend Their Claims to Include Copyright Registrations Obtained During the Pendency of This Action

As Chief Judge Preska further held in *Muench Photography, Inc.*, a plaintiff cannot amend their claims to include copyright registrations that were obtained during the pendency of a litigation; to hold otherwise would allow "litigation into perpetuity." *See Muench Photography, Inc.*, 2012 WL 1021535 at *5; *see also Accurate Grading Quality Assur., Inc.*, 2013 WL 1234836 at *7 ("[A]ny pending application cannot support [plaintiffs'] tenuous copyright claim, even if registration is later obtained.").

Here, to the extent Plaintiffs argue they should not have to wait six-to-eight months for the U.S. Copyright Office to process their applications before they can sue for copyright infringement, they can simply pay to have their applications expedited.  However, the fact remains in this action that all Plaintiffs have for the Paltrow Image is a pending copyright application.  As such, Plaintiffs' claims alleging infringement thereof must be dismissed pursuant to FRCP 12(b)(6).

-14-

**B.     Plaintiffs' Claims for Alleged Copyright Infringement Must be Dismissed Because Gossip Cop's Use of the Images is Protected by the Fair Use Defense**

The fair use of an original work provides a complete defense to an allegation of copyright infringement.  Indeed, as set forth in 17 U.S.C. §107, "the fair use of a copyrighted work [...] for purposes such as criticism, comment, news reporting [...] is not an infringement of copyright."  In determining whether a use is fair use, courts consider the following four (4) factors: (i) the purpose and character of the use, including, whether such use is of a commercial nature or is for nonprofit educational purposes; (ii) the nature of the copyrighted work; (iii) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (iv) the effect of the use upon the potential market for or value of the copyrighted right."   17 U.S.C. §107(1)-(4); *see also Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 576, 114 S.Ct. 1164, 1170, 127 L.Ed.2d 500 (1994) and *Cariou*, 714 F.3d at 705.

As the Supreme Court held in *Campbell*, application of the fair use doctrine "calls for [a] case-by-case analysis."  *Campbell*, 510 U.S. at 576.  Here, a side-by-side analysis of Plaintiffs' Images with Gossip Cop's use of those Images (both of which are properly before this Court on a motion to dismiss pursuant to FRCP 12(b)(6)) reveals that Gossip Cop's use of the Images *in conjunction with* news stories on its website to report and comment on the veracity of previously-published articles that used the Images, as well as the stories told by the Images themselves, is classic, transformative fair use that should not be stifled by Plaintiffs.

**1.     Purpose and Character of the Use: Gossip Cop's Use of the Images Was for Transformative News Reporting and Commentary**

The Supreme Court held in *Campbell* that the "central purpose of the first [fair use] factor is to see whether the new work [...] adds something new, with a further purpose or different character, altering the first with new expression, meaning or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579.  With

-15-

respect to transformative works, the Supreme Court held in *Campbell* that the "goal of copyright, to promote the science and the arts, in generally furthered by the creation of transformative works [as] [s]uch works lie at the heart of the fair use doctrine […]." *Id.*

An example of transformative news reporting is when a defendant uses an image *in conjunction with* the text and substance of their own news story or to report and comment on the underlying story told by the image itself. *See, e.g. Mathieson v. Associated Press*, 1992 WL 164447, *3 (S.D.N.Y., June 25, 1992) and *Nunez v. Caribbean Intern. News Corp.*, 235 F.3d 18 (1st Cir. 2000).

In *Mathieson*, the defendant published an article about the Iran-Contra scandal and "a new business venture involving Oliver North[,] […] Guardian Technologies, Inc." *Mathieson*, 1992 WL 164447 at *1. The photograph complementing the story "revealed the nature of the [Guardian], the nature of its products, and the participation of North and his business partner in the [Guardian]." *Id.* Thus, the court held the defendant used the photograph "*in conjunction with a news story* [that] complemented the text of the news story in a usual and customary […] [such] character and purpose […] falls well within the bounds of […] news reporting […]." *Id.*

In *Nunez*, the defendant (a news organization, like Gossip Cop), used the plaintiff's previously-published photographs of Ms. Joyce Giraud, "Miss Puerto Rico Universe 1997" *in conjunction with* "several [of] its articles about the controversy" surrounding the photographs. *Nunez*, 235 F.3d at 21. The "controversy" was whether the photographs were "appropriate for a Miss Puerto Rico Universe, based on the fact that [Ms.] Giraud was naked or nearly naked in at least one of the photos." *Id.* After reviewing the works in question, the First Circuit held the defendant used the photographs:

-16-

"not just to titillate, but also to inform […] [t]his informative function is confirmed by the [defendant's] presentation of various news articles […] in conjunction with the reproduction […] [defendant] reprinted the pictures not just to entice the buying public, but to place its news articles in context; as the district court pointed out, '<u>the pictures were the story</u>,' […] [i]t would have been much more difficult to explain the controversy without reproducing the photographs […]." *Nunez*, 235 F.3d at 22. (Emphasis supplied).

The First Circuit went on to hold that, it "suffices to say here that [defendant] did not manufacture newsworthiness, as it sought not to 'scoop' [plaintiff] by publishing his photographs, but merely to provide news reporting to the hungry public […]." *Id.*

The First Circuit further held the defendant's use of the photographs was transformative because the plaintiff and defendant used the photographs for different purposes—modeling portfolios for the plaintiff; use in a news story for the defendant. *Nunez*, 235 F.3d. at 23. Thus, "by using the photographs in conjunction with editorial commentary, [defendant] did not merely supersede[] the objects of the original creation[s]…but instead used the works for a further purpose, giving them a new meaning, or message." *Id.* (internal quotations omitted).

Moreover, the commercial use of a work does not militate against a finding of fair use when the defendant's use of the work was transformative. As the Supreme Court held in *Campbell*, the language of 17 U.S.C. §107:

"makes clear that the commercial […] purpose of a work is only one element of the first factor enquiry into purpose and character […] [i]f, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of §107, including news reporting, comment, criticism […] Congress could not have intended such a rule." *Campbell*, 510 U.S. at 585.

Put simply, if the defendant's use falls within the enumerated categories of transformative fair use set forth in 17 U.S.C. § 107, the commercial nature of the use is afforded little, if any, weight. As the court held in *Mathieson*, the:

-17-

"Second Circuit has spoken of the special importance of the first factor when a challenged use fits among the enumerated permissible purposes: 'there is a strong presumption that factor one favors the defendant if the allegedly infringing work fits the description of uses described in Section 107.  If a [work] falls into one of these categories […] assessment of the first fair use factor should be at an end […] even though, as will often be the case, the [defendant] anticipates profits.'" *Mathieson*, 1992 WL 164447 at *5 *quoting Wright v. Warner Books, Inc.*, 953 F.2d 731, 736-37 (2d Cir. 1991).

*See also Cariou*, 714 F.3d at 708 ("Although there is no question [the defendant's] artworks are commercial, we do not place much significance on that fact due to the transformative nature of the work"); *Blanch v. Koons*, 467 F.3d 244, 254 (2d. Cir. 2006) ("[H]ere, since the 'new work' is 'substantially transformative' […] the significance of other factors, [including] commercialism, are of [less significance […] [w]e therefore discount the secondary commercial nature of the use); and *Mathieson*, 1992 WL 164447 at *5 ("that [defendant] had some commercial motivation is of little import in this instance where the clear purpose of the use—news reporting—dispels the notion of theft or piracy […]").

### i.       Gossip Cop's Transformative Use of the Images

Here, a side-by-side analysis of Plaintiffs' Images and Gossip Cop's use of same *in conjunction with* news stories on its website, reveals that Gossip Cop's use falls squarely within the transformative news reporting and commentary categories of fair use.  Indeed, as discussed *supra*, Gossip Cop used the Images in news stories for the purpose of reporting and commenting on the veracity of articles previously published by secondary users of the Images and to report and comment on the underlying story told by the Image itself.  For example, since the Kunis/Kutcher and Pattinson Images were held out as supporting evidence in the original articles in which they appeared, Gossip Cop could not effectively report on the accuracy of those stories unless its readers saw the Images *in conjunction with* Gossip Cop's reporting and commentary.  Thus, Gossip Cop included the Images and the text of the headline from the articles in which the

-18-

Kunis/Kutcher and Pattinson Images originally appeared as visual aids so its viewers could see nothing in the Images supported claims made in *The Sun* and *HollywoodLife*, respectively.

Moreover, readers of the original story in *The Sun* were likely led to believe that the claims regarding Ms. Kunis and Mr. Kutcher moving to London were true because the headline reads, "AK & MK in the UK," above the Image in which the celebrities can be seen on a city street (presumably in London looking for an apartment). Thus, contrary to Plaintiffs' erroneous assertion, the Kunis/Kutcher Image *does* have "independent news [and] information value" because *it is part of the story. See Dkt.* 13 ¶ at 15.

Furthermore, even if Gossip Cop is not reporting on the veracity of prior publications, its use of images like the Ross Image which is, in effect, *the story, in conjunction with* the text of its news stories, still constitutes transformative news reporting. Indeed, the defendant in *Mathieson* was not commenting on the veracity of a prior publication; rather, they used the plaintiff's photograph, *in conjunction with* their news story, because it "complemented the text of the news story in a usual and customary way." This is precisely why Gossip Cop used the Ross Image: it showed Ms. Ross without her wedding ring, which, like the photograph used in *Mathieson*, "complemented the text of the news story [about Ms. Ross and her husband experiencing marital difficulties] in a usual and customary way."

### ii.   Gossip Cop Used the Images for a Different Purpose than Plaintiffs

Gossip Cop's use of the Images for transformative news reporting and commentary is wholly distinct from Plaintiffs' purpose in creating the Images. Specifically, Plaintiffs' purpose was to take photographs and video of celebrities. Gossip Cop, on the other hand, used the Images in news stories for the purpose of reporting and commenting on the veracity of previously-published articles and to report and comment on the underlying story told by the Image itself.

-19-

The allegations in the Amended Complaint make clear that Plaintiffs do not use the Images for the same purpose as Gossip Cop. Thus, like the defendant in *Nunez*, Gossip Cop's use of the Images did not merely supersede[] the objects of the original creation[s]…but instead used the [Images] for a further purpose, giving them a new meaning, or message."

### iii.   Plaintiffs' Allegations in the Amended Complaint Regarding the Commercial Nature of Gossip Cop's Business Should Be Disregarded Altogether

Plaintiffs' allegations in the Amended Complaint that Gossip Cop's use of the Images will effectively destroy the paparazzi as we know it are simply a red-herring, irrelevant attack on Gossip Cop's business model. What *is* relevant to the instant motion to dismiss is that Gossip Cop's use of the Images is transformative news reporting and commentary, uses that fall squarely within the preamble of 17 U.S.C. § 107. Thus, the fact that Gossip Cop is a for-profit entity should be afforded little-to-no weight or significance by this Court.

Based on the foregoing, the first fair use factor weighs in Gossip Cop's favor.

### 2.   The Nature of the Images: Plaintiffs' Images are Entitled to Little, if Any, Protection Against Gossip Cop's Transformative Use Because They (1) Are Creative and (2) Were Previously Published

The second fair use factor weighs in Gossip Cop's favor because Plaintiffs' Image are factual in nature and were published prior to Gossip Cop's transformative use of same.

When evaluating the second fair use factor, courts consider two characteristics of the original work: (i) "whether the work is expressive or creative, such as a work of fiction, or more factual" and (ii) "whether the work is published or unpublished." *See, Blanch*, 467 F.3d at 257. The scope of fair use is considerably broader for the use of photographs and images of celebrities, like Plaintiffs' Images, because they are factual in nature, not "creative" or "imaginative." *See Campbell*, 510 U.S. at 586; *see also Guccione v. Flynt*, 1984 WL 18, *4 (S.D.N.Y., June 15, 1984) (Sweet, J.) (wherein the court held that the plaintiff's photograph of Robert C. Guccione,

the founder of Penthouse magazine, with a nude model, was entitled to less protection against the defendant's use because the photograph did not represent a "substantial creative effort by plaintiffs"); *Mathieson*, 1996 WL 164447 at *6 (wherein the court held that "[o]bjectively, [the] photo [of Olive North] is considerably less 'imaginative' or 'creative' than it might have been had plaintiff employed more dramatic artistic effects […].").

The scope of fair use is also considerably broader for the use of works that were published prior to the defendant's use of same, like Plaintiffs' Images were before Gossip Cop used them. *See, Blanch*, 467 F.3d at 257 (wherein the Second Circuit said the second factor "favors the defendants" because the plaintiff's work "was published") and *Mathieson*, 1992 WL 164447 at *6 ("The photographs at issue […] had been published and publicly disseminated […] prior to [the defendant's] use […] [t]hus, plaintiff's right to control the first public appearance of the photos is not implicated here, nor does there exist any issue as to a 'race to publish.'").

Here, with all due respect to Plaintiffs, their Images of celebrities are *not* "creative."  Even a cursory review of the Images reveals they are simply "factual" Images of celebrities living the lives that celebrities live.  Furthermore, the evidence properly before this Court confirms the Images were published and available to the general public—by Plaintiffs and other users (*e.g.*, *The Sun*)—*before* Gossip Cop used them.  As such, Plaintiffs "right to control the first public appearance of the [Images] is not implicated here, nor does there exist any issue as to a 'race to publish.'"  Accordingly, the second fair use factor weighs in Gossip Cop's favor.

### 3. The Amount and Substantiality of the Use: Gossip Cop's Transformative Use Required Copying the Images

The third fair use factor weighs in Gossip Cop's favor because its transformative use of the Images required copying them in their entirety.  Courts in the Second Circuit have determined that copying an entire work does not militate against a finding of fair use because "sometimes

{05086/608911-000/01144438.1}

[such copying is] necessary to make fair use of the image." *Cariou*, 714 F.3d at 710.  As the Second Circuit held in *Cariou*, the secondary user "must be [permitted] to 'conjure up' *at least* enough of the original [work] to fulfill its transformative purpose." *Id. quoting Campbell*, 510 U.S. at 588. (Emphasis in original).  Furthermore, the Second Circuit held in *Cariou* that courts "consider not only the quantity of the materials taken but also their quality and importance to the original work […]." *Cariou*, 714 F.3d at 710

Here, Gossip Cop's transformative use of the Images required copying them in their entirety.  Specifically, the previously-published stories using the Kunis/Kutcher and Pattinson Images upon which Gossip Cop reported used the Images to support the claims being made in the articles.  Thus, in order to report on, and convey, the veracity of the previously-published stories, Gossip Cop necessarily copied the headline and the Image from the original stories and used them *in conjunction with* Gossip Cop's independent news reporting.[11]  Furthermore, Gossip Cop used the portion of the Ross Image that was necessary for its readers to see that Ms. Ross was not wearing a wedding ring and, thus, as Gossip Cop reported, was experiencing marital difficulties.

Put simply, to have used "any less [of the Images] would have made the [Images] useless to [Gossip Cop's] stor[ies]." *Nunez*, 235 F.3d at 24.  Accordingly, the third fair use factor weighs in Gossip Cop's favor.

### 4.    The Market Inquiry: Gossip Cop's Use of the Images Does *Not* Usurp the Market for Plaintiffs' Image

The fourth fair use factor weighs in Gossip Cop's favor because it is uses the previously-published, factual Images within its unique, transformative news reporting market.  As such, Gossip Cop is *not* "offering a market substitute" for the Images.

---

[11] In contrast, when the image is not "the story," Gossip Cop includes stock photographs of the celebrities in question that Gossip Cop obtains under license.  *See Dkt.* 11.

With respect to the fourth factor, the Second Circuit held in *NXIVM Corp*. that the primary focus is "on whether defendants are offering a market substitute for the original." *NXIVM Corp v. Ross Institute*, 364 F.3d 471, 482 (2d Cir. 2004). The Second Circuit further held in *NXIVM Corp*. that:

> "[T]he relevant market effect with which we are concerned is the market for plaintiffs expression, and thus it is the effect of defendants' use of that expression on plaintiffs' market that matters, not the effect of defendants work as a whole [...] that fair use, being transformative, might well harm, or even destroy, the market for the original is of no concern to us so long as the harm stems from the force of the criticism offered." *Id*.

Thus, as the Second Circuit held in *Cariou,* "our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work." *Cariou*, 714 F.3d at 708 *citing to Blanch*, 467 F.3d at 258 and *NXIVM Corp*., 364 F.3d at 481-2.

Here, as discussed *supra*, Gossip Cop uses the Images within a unique, transformative news reporting market. Specifically, unlike other secondary users of the Images, Gossip Cop did not simply reproduce the Images on its website in order to ride the coattails of Plaintiffs' time and expense in capturing the Images. Instead, Gossip Cop used the Images (i) *in conjunction with* news stories on its website to report and comment on the veracity of prior publications by secondary users who used the Images or (ii) as a visual aid for its readers to better understand Gossip Cop's reporting and commentary on the Images' underlying story. Thus, to the extent there is any harm to "the potential market value," or substitute being offered for, the Images, it is *not* from Gossip Cop, and Plaintiffs' allegations in the Amended Complaint to the contrary are simply unfounded. *See Bill Graham Archives v. Dorling Kindersely, Ltd.*, 448 F.3d 605, 615 (2d Cir. 2006) (wherein the court held that because the defendant's use of the work "falls within a transformative market, [plaintiff] does not suffer market harm due to the loss of license fees.").

-23-

Accordingly, the fourth factor weighs in Gossip Cop's favor, and to hold otherwise would allow Plaintiffs to impermissibly chill Gossip Cop's fair use of the Images.  *Id.* at 614-5 ("copyright holders cannot prevent others from entering fair use markets merely by 'developing or licensing a market for […] news reporting […] or other transformative uses of its own creative work'") *quoting Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 146 n. 11 (2d Cir. 1998).

### 5.    The Balance of Relevant Factors Weighs in Favor of Gossip Cop

On balance, all four fair use factors weigh in Gossip Cop's favor.  Indeed, it is hard to fathom a more classic fair use scenario than Gossip Cop's transformative use of the previously-published, factual Images, in conjunction with articles on its website, to provide news reporting to the news-hungry public that does not usurp the market for Plaintiffs' Images.  Accordingly, Plaintiffs cannot state a plausible claim against Gossip Cop for infringing any of the Images and the Amended Complaint must be dismissed in its entirety pursuant to FRCP 12(b)(6).

### C.    Plaintiffs' Claim for Vicarious Copyright Infringement Must be Dismissed Because Gossip Cop's Employees' Alleged Use of the Images is Also Protected by the Fair Use Defense

The first element of a vicarious copyright infringement claim is a plausible *direct* copyright infringement claim against a third party.  *See Arista Records, LLC v. Lime Group, LLC*, 784 F.Supp.2d 398, 423 (S.D.N.Y. 2011).  Once established, the plaintiff must then plead facts sufficient to render it plausible that the defendant had the "[1] right and ability to supervise [the alleged third-party direct infringer] [that] coalesced with [2] an obvious and direct financial interest in [3] the exploitation of copyrighted materials."  *Berry v. Deutsche Bank Trust Co. Americas,* 2008 WL 4694968, 5 (S.D.N.Y., Oct. 21, 2008).

In the original Complaint, Plaintiffs sought to rely upon the users of Gossip Cop's website to establish the predicate direct infringement.  *See Dkt.* 1.  After Gossip Cop submitted its January

-24-

13, 2014 letter to this Court demonstrating, *inter alia*, the lack of any factual allegations in the original Complaint concerning the existence of an agency relationship between Gossip Cop and users of its website (*Dkt.* 11), Plaintiffs now seek to rely upon Gossip Cop's employees.  That is to say, after Plaintiffs' woefully deficient pre-filing factual investigation *and* additional 21 days to amend their Complaint, Plaintiffs abandoned their initial theory and have resorted to the age-old employer-employee relationship to satisfy the agency element of their vicarious copyright infringement claim.  Tellingly, Plaintiffs did *not* renew their claims for contributory infringement or inducement of infringement in the Amended Complaint, which do *not* include agency elements.

The foregoing notwithstanding, any use of the Images by Gossip Cop's employees is protected by the fair use defense for the identical reasons that Gossip Cop' use is protected by the fair use defense, as discussed *supra*.  Thus, Plaintiffs *cannot* establish the predicate direct copyright infringement necessary to prevail on their vicarious copyright infringement claim, and such claim must be dismissed pursuant to FRCP 12(b)(6).

## V.    CONCLUSION

Based on the foregoing, Gossip Cop respectfully requests that this Court (i) dismiss the Amended Complaint in its entirety, and with prejudice, pursuant to FRCP 12(b)(6); (ii) award Gossip Cop its reasonable costs and attorneys' fees incurred in connection with prosecuting the instant motion to dismiss; and (ii) award Gossip Cop any further relief this Court deems just and equitable.

{05086/608911-000/01144438.1}

Dated: March 21, 2014
     White Plains, New York           Respectfully submitted,

Yuval H. Marcus
Cameron S. Reuber
Jonathan W. Thomas
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Phone: (914) 288-0022
Fax:  (914) 288-0023
Email: Marcus@LeasonEllis.com
Email: Reuber@LeasonEllis.com
Email: Thomas@LeasonEllis.com

*Attorneys for Defendant Gossip Cop*

## CERTIFICATE OF SERVICE

It is hereby certified that on March 21, 2014, a true and correct copy of the foregoing **Memorandum of Law in Support of Defendant Gossip Cop Media, LLC's Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(6), or, in the Alternative, Rule 56 of the Federal Rules of Civil Procedure** was served via operation of the Court's ECF filing system, as well as by First Class Mail and email, upon the following counsel of record for Plaintiffs:

Craig S. Sanders, Esq.
SANDERS LAW, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Email: csanders@sanderslawpllc.com

Yuval H. Marcus
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Phone: (914) 288-0022
Facsimile:  (914) 288-0023
Email: Marcus@LeasonEllis.com

*Attorneys for Defendant Gossip Cop*

{05086/608911-000/01144438.1}